FILED
2026 JUL 20 AM 10: 12
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DARNELL THOMAS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Cause No. EP-25-CV-648-DCG** |
| | § | |
| **CHARISMA EDGE,** ***Warden*****, FCI La Tuna,** | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Darnell Thomas, Federal Prisoner Number 28291-511, challenges the execution of his sentence through a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1.[1] His opposed petition is dismissed without prejudice for failure to exhaust his administrative remedies.

## BACKGROUND

Thomas is a former inmate at the La Tuna Federal Correctional Institution ("FCI La Tuna") in El Paso County, Texas. *Id.* at 1. FCI La Tuna is within the jurisdiction of this Court. 28 U.S.C. § 124(d). Thomas is now assigned to the Federal Correctional Institution in Texarkana, Texas. *See* Federal Bureau of Prisons, Find an Inmate, www.bop.gov/inmateloc (search for Reg. 28291-511, last visited June 30, 2026). His projected release date is March 5, 2030. *Id.*

Thomas pled guilty on May 29, 2025, to possession with intent to distribute 50 grams or more of methamphetamine. *United States v. Thomas*, 3:24-cr-00063 (E.D. Tenn), J. Crim. Case, ECF No. 89. He was sentenced on September 24, 2025, to 70 months' imprisonment followed by three years' supervised release. *Id.* He arrived at his designated Bureau of Prisons ("BOP") place of confinement, FCI La Tuna, on November 13, 2025. *See* Resp't's Resp., Ex. 1 (Decl. of Bertha

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this matter. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Tovar), Attach. 1 (Public Information Inmate Data), ECF No. 5-1 at 10.

Thomas alleges that Respondent Warden Charisma Edge has not properly calculated his "Good Time Credits, First Step Act Credits and Second Chance Act Credits," which are used to determine his release date. Pet'r's Pet., ECF No. 1 at 1. Specifically, he claims that he is entitled to First Step Act Earned Time Credits ("FTCs") for the time he spent in "federal custody" between the day he pled guilty on May 29, 2025, and the day he arrived at his designated BOP facility on November 18, 2025. *Id.* at 1, 3. He further claims that he has not yet received a Second Chance Act placement, which could allow him to spend up to 365 days in a residential reentry center and six months in home confinement. *Id.* at 2, 3. He argues that he is not required to exhaust his administrative remedies because this action involves his unlawful and illegal imprisonment in violation of the Constitution and laws of the United States. *Id.* at 5. He asks that the Court issue an order directing Warden Edge to "properly provide all Good Time, First Step Act, and Second Chance Act Credits" to which he believes he is entitled.[2] *Id.*

## STANDARD OF REVIEW

A prisoner's "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). A prisoner may attack "the manner in which his sentence is carried out or the prison authorities' determination of its duration" through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a prisoner must show that he is "in custody

[2] *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) ("A convicted prisoner does not have a constitutional right to be released before the expiration of a valid sentence. *Cf. Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).").

in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

## ANALYSIS

### A. Exhaustion

Thomas maintains "[e]xhaustion of [a]dministrative [r]emedies is not required for a petition for habeas corpus." *See* Pet'r's Pet., ECF No. 1 at 5. A search of Thomas' administrative remedy history shows he "has submitted only one administrative remedy request during his term of imprisonment … related to an allegation of staff misconduct," not the calculation of his sentence. *See* Resp't's Resp., Ex. 2 (Decl. of Johnna Burrows), ECF No. 5-2 at ¶¶ 10, 11, and Attach. 2 (Administrative Remedy Generalized Retrieval), ECF No. 5-2 at 11–13. Thomas argues "[t]o require the exhaustion of administrative remedies in a habeas corpus claim would be to create a rule that abrogates a Constitutional right which is prohibited." Pet'r's Pet., ECF No. 1 at 5. He is wrong. *United States v. Setser*, 607 F.3d 128, 133 (5th Cir. 2010).

The Fifth Circuit has long held that the BOP should be permitted to administratively rectify an error if it fails to properly calculate a sentence. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991). "In the event that a prisoner feels he has been improperly refused credit for time he has served in … custody, the prisoner must first 'seek administrative review of the computations of [his] credit, and, once [he has] exhausted [his] administrative remedies, [the] prisone[r] may only then pursue judicial review of these computations.'" *Setser*, 607 F.3d at 133 (quoting *United States v. Dowling*, 962 F.2d 390, 393 (5th Cir. 1992)); *see also Falcetta v. United States*, 734 F. App'x 286, 287 (5th Cir. 2018) (holding that "dismissal for lack of jurisdiction was appropriate because [the petitioner] failed to show that he exhausted his sentencing credit claim fully through the multi-step BOP exhaustion procedure prior to filing his § 2241 petition."); *Rourke v. Thompson*, 11 F.3d

47, 49 (5th Cir. 1993) ("[T]his court has determined that a § 2241 petitioner "must first exhaust his administrative remedies through the Bureau of Prisons.") (quoting *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (citations omitted)).

While there are exceptions to the exhaustion requirement "where the available administrative remedies either are unavailable or wholly inappropriate to the relief a prisoner seeks, or where the attempt to exhaust such remedies would itself be a patently futile course of action," such exceptions apply only in "extraordinary circumstances." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (citations omitted). And a petitioner bears the burden of demonstrating such circumstances. When an inmate lacks a valid excuse for failing to exhaust his administrative remedies prior to filing a § 2241 petition, his petition should be dismissed. *See Thomason v. Guzik*, 226 F.3d 642, at *1 (5th Cir. 2000) (per curiam) ("As he has failed to demonstrate extraordinary circumstances which would warrant a waiver of the exhaustion requirement, we AFFIRM the district court's dismissal of the petition for failure to exhaust administrative remedies.").

Consequently, Thomas "must first pursue all available administrative remedies" before seeking relief under § 2241. *Fillingham v. United States*, 867 F.3d 531, 535 (5th Cir. 2017). And his exhaustion in this context means "proper exhaustion," including his compliance with all administrative deadlines and procedures established by the BOP. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion in the context of the Prison Litigation Reform Act).

The Court finds that Thomas has failed to exhaust his administrative remedies or carry his burden of proving the futility of an administrative review. *See Fuller*, 11 F.3d at 62 (explaining federal prisoners must exhaust "administrative remedies before seeking habeas relief in federal court under 28 U.S.C. § 2241."). It notes that dismissal on this basis alone is warranted. *See Rivkin*

*v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Thomas had properly exhausted his claims, the Court would not grant him the § 2241 relief he seeks.

**B. Alternatively, Thomas' Petition Lacks Merit**

Thomas suggests that Warden Edge has not properly calculated his Good Time Credits ("GTCs"), First Step Act Earned Time Credits ("FTCs"), and Second Chance Act "credits." Pet'r's Pet., ECF No. 1 at 5.

**(1) Jail Credits**

"After a district court sentences a federal offender, … the BOP has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a)). The BOP must credit a federal prisoner for the days spent in pretrial custody prior to the imposition of a sentence if that time is not credited against another sentence. 18 U.S.C. § 3585(b); *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2003) ("The Attorney General, through the Bureau of Prisons (BOP), determines what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences.").

In this case, the BOP gave Thomas 126 days of jail credit for the time he spent in detention from his arrest on July 31, 2024, to his sentencing on September 23, 2025. *See* Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), Attach. 1 (Public Information Data), ECF No. 5-1 at 11; 18 U.S.C. § 3585(b)(1). The BOP also determined that Thomas' full-term expiration date on his 70-month sentence was March 19, 2031, without the application of any GCTs or FTCs.

**(2) Good Time Credits (GTCs)**

A prisoner serving a term of imprisonment of more than one year may receive 54 days of

GTCs for each year of imprisonment. 18 U.S.C. § 3624(b)(1).

Based on his 70-month sentence, Thomas is projected to receive up to 314 days of GTCs if he maintains a clean disciplinary record. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 5-1 at ¶ 10. Applying these GCTs to his full-term expiration date results in a conditional release date via GCTs of May 9, 2030.

**(3) First Step Act Earned Time Credits (FTCs)**

Thomas claims that he is entitled to FTCs for the time he spent in "federal custody" between the day he pled guilty on May 29, 2025, and the day he arrived at his designated BOP facility on November 18, 2025. Pet'r's Pet., ECF No. 1 at 1, 3.

The FSA does not mandate that an inmate begin earning FTCs as soon as he is convicted, sentenced, or self-surrenders. Instead, it provides that an inmate's ability to earn FTCs will not begin until after his "sentence commences." Specifically, the FSA provides:

> (B) Availability. – A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed … during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

18 U.S.C. § 3632(d)(4)(B). A sentence commences under 18 U.S.C. § 3585(a) when "the defendant is received in custody awaiting transportation to .... the official detention facility at which the sentence is to be served." But the regulation adds "[a]n eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42.

The language in 28 C.F.R. § 523.42(a) should not be read to misinterpret the date on which a sentence commences under § 3585(a). Rather, it should be read as a point of clarification as to

when an inmate is eligible to begin earning FTCs after his sentence commences. This is because the FSA requires the Attorney General to develop a risk and needs assessment system to:

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> *****
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs ...;
>
> (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison.

18 U.S.C. § 3632(a). Once the recidivism risk assessment is completed, the First Step Act permits the BOP to reward eligible inmates for their successful participation in approved evidence-based recidivism reduction (EBRR) programs and productive activities (PAs) by allowing them to accumulate program days and earn FTCs:

> A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
>> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>>
>> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C. § 3632(d)(4)(A). Accordingly, before participating in EBRR programming or PA's, an

inmate must first undergo "a risk and needs assessment" to establish whether he has a "minimum, low, medium, or high risk for recidivism." *Id.* § 3632(a)(1).

The risk and needs assessment consist of two components: a Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score and a Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). *Lopez v. Edge*, No. EP-25-CV-390-KC, 2026 WL 800757, at *3 (W.D. Tex. Mar. 23, 2026). The PATTERN score is designed to: (1) determine an inmate's recidivism risk; (2) assess an inmate's risk of violent or serious misconduct; (3) determine the type and amount of programming appropriate to reduce an inmate's risk of reoffending; (4) assess an inmate's recidivism risk and programming needs; and (5) determine when an inmate is ready to transfer to prerelease custody or supervised release. 18 U.S.C. § 3632(a). SPARC-13 is used to examine an inmate in areas which can be targeted to reduce his risk of recidivating. Based on the results of SPARC-13, the BOP staff will recommend evidence-based EBRR programs and PAs for an inmate consistent with his needs.

Additionally, the BOP must evaluate each EBRR program and PA to ensure that it meets the FSA's requirements. These FSA requirements include: (1) evidence that the program or activity reduces recidivism or is based on research indicating it is likely to be effective in reducing recidivism, and (2) "is designed to help prisoners succeed in their communities upon release from prison." 18 U.S.C. §§ 3635(3)(A) and (B).

Congress could have easily legislated the specific date that an inmate begins earning FTCs. But Congress did not do that. Specifically, Congress did not provide that an inmate shall begin receiving credit upon sentencing or before he arrives at his designated BOP unit. Instead, Congress created a floor, legislating that an inmate was not permitted to begin earning credit before he "is

received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

There are several practical reasons for this. First, an inmate is often not in BOP custody at the time of sentencing and is instead in a local detention facility. As a result, the BOP has little to no information about the inmate and cannot complete the required PATTERN and SPARC-13 evaluations. Second, the BOP cannot evaluate EBRR programs and PAs in a non-BOP facility to ensure they meet the FSA requirements. So, an inmate generally cannot begin a BOP-approved EBRR or PA until he reaches his designated facility and is properly evaluated. Indeed, without the needs assessment, the BOP does not know which BOP-approved EBRR programs or PAs are appropriate for the inmate.

Consequently, it follows that Thomas could not have "successfully participated" in any recommended programming—and could not have accrued any FTEs—before he arrived at his designated BOP facility, FCI La Tuna, because (1) he did not undergo a risk and needs assessment until he arrived and (2) the BOP did not have the opportunity to evaluate and ensure that prospective EBRR programs or PAs met Thomas' requirements based on his needs identified in his risk and needs assessment. *See, e.g., Poff v. Carr*, No. 4:21-CV-900-P, 2022 WL 2133871, at *5-6 (N.D. Tex. June 14, 2022) (unpublished) ("[A]ny program or activity that [petitioner] seeks FSA time credits for must be approved by the BOP and be assigned to her based on her specific criminogenic needs"); *Hare v. Ortiz*, Civ. No. 20-14093 (RMB), 2021 WL 391280, at *9 (D.N.J. Feb. 4, 2021) (unpublished) ("Time [c]redits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate."); *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 WL 1658836, at *3

(D. Conn. May 25, 2022) (unpublished) ("[A] prisoner may earn time credits only for completing programs to which he has been specifically assigned based on his particular recidivism risk.").

As a result, Thomas is not entitled to FTCs for the time he spent in federal custody between the day he pled guilty on May 29, 2025, and the day he arrived at his designated BOP facility on November 18, 2025. However, as of January 22, 2026, Thomas had accrued 70 program days, which equated to an earned total of 20 FTCs. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), Attach. 3 (FSA Time Credit Assessment), ECF No. 5-1 at 14. If Thomas' First Step Act status remains the same, he is projected to earn a total of 365 FTCs towards his supervised release on May 9, 2029, and 40 FTCs towards his placement in a community reentry facility. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 2-1 at ¶ 14. With the addition of these prerelease FTCs, Thomas' projected conditional transition to the community results in a date of March 30, 2029—that is, 40 days before May 9, 2029.

**(4) Second Chance Act**

The Second Chance Act authorizes the BOP to *consider*, to the extent practicable, placing prisoners in prerelease custody who are nearing the end of their imprisonment. 18 U.S.C. § 3624(c). Importantly, the statute only requires the BOP to *consider* placing an inmate in pre-release custody for up to twelve months or in home confinement for up to six months. It does not *require* the BOP to make such a placement. The Second Chance Act does not create any additional "credits."

Moreover, the BOP is responsible for designating "the place of the prisoner's imprisonment." *Id.* § 3621(b). Consequently, the BOP—not a court—is the proper place to direct a request for placement in a Residential Reentry Center or Home Confinement. *United States v.*

*Sneed*, 63 F.3d 381, 388 n.6 (5th Cir. 1995) (citing 18 U.S.C. § 3624(c) (providing that the BOP has the authority to "place a prisoner in home confinement")). Additionally, release from institutional custody to a residential reentry center or home detention "is a change in conditions of confinement and not cognizable under § 2241." *Maldonado v. Rule*, No. 4:24-cv-0971-P, 2025 WL 476256, at *2 (N.D. Tex. Feb. 11, 2025) (citing *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (explaining a challenge to exclusion from program allowing home confinement is more properly brough as a *Bivens* action)).

The BOP is currently considering Thomas for 365 days in pre-release custody pursuant to the Second Chance Act. Resp't's Resp., Ex. 1 (Decl. of Bertha Tovar), ECF No. 5-1 at ¶ 13. This is the maximum number of days he may receive under the Second Chance Act and was recommended by his Unit Team. It is not the result of Thomas undergoing the individualized assessment required under the Second Chance Act. As a result, placement is still conditional on an assessment under 18 U.S.C. § 3621(b).

**(5) Summary**

In summary, Thomas does not explain how the BOP erred in calculating his projected release date—and the Court, after reviewing the record, finds no errors. His conclusory allegations that Warden Edge miscalculated his GTCs, ETCs, and improperly denied him early placement in a community-based residential facility under the Second Chance Act are "insufficient for federal habeas relief [because he] has not met Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts, which requires a petitioner to plead facts in support of his claims." *Murphy v. Dretke*, 416 F.3d 427, 436–37 (5th Cir. 2005); *see also Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("conclusory allegations do not raise a constitutional issue in a habeas

proceeding"). Finally, his argument that he is entitled to Second Chance Act "credits" is based on the erroneous premise that such credits exist.

## CONCLUSIONS AND ORDERS

The Court concludes that Thomas has failed to exhaust his administrative remedies. It further concludes that his claims lack merit as he has failed to explain how the BOP erred in calculating his projected release date. The Court accordingly enters the following orders:

**IT IS ORDERED THAT** Petitioner Darnell Thomas' "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies.

**IT IS FURTHER ORDERED THAT** all pending motions are **DENIED**.

**IT IS FINALLY ORDERED THAT** the District Clerk shall **CLOSE** this case.

**SIGNED** this 20th day of July 2026.

**DAVID C. GUADERRAMA**
**SENIOR UNITED STATES DISTRICT JUDGE**